# EXHIBIT 3

EXHIBIT 3

ITEMIZED MONTHLY SCHEDULE OF FEES AND ADMINISTRATIVE EXPENSES
AND EXPLANATION OF SERVICES

The following exhibit addresses the services rendered and fees and expenses incurred by each professional employed by the Receiver. The fees and expenses incurred are listed by month for each professional. Descriptions of the particular services are contained in brief narratives and are not limited by month as many tasks were continuing in nature. Additional detail of time spent is contained in the fee petitions previously submitted to the Court by each professional. In addition to the below charts of monthly fees and expenses incurred by each professional, at the end of this exhibit is an additional chart detailing aggregate fees and expenses for all professionals, as well as administrative expenses paid, on a monthly basis.

## I.     KAYE SCHOLER LLP

Kaye Scholer has served as the Receiver's general counsel from the inception of this matter. This has required Kaye Scholer to work on a large number of matters. Some of the more major matters are summarized below:

### A.     Itemized Schedule of Fees and Expenses Incurred.

| DATE | FEES | | EXPENSES | |
|------|------|------|------|------|
| 2/16/2005-3/31/05 | $ | 584,335.35 | $ | 18,050.22 |
| 4/1/2005-4/30/2005 | $ | 780,372.70 | $ | 31,857.74 |
| 5/1/2005-5/31/2005 | $ | 702,602.60 | $ | 51,133.86 |
| 6/1/2005-6/30/2005 | $ | 575,657.80 | $ | 35,196.80 |
| 7/1/2005-7/31/2005 | $ | 339,531.85 | $ | 17,308.15 |
| 8/1/2005-8/31/2005 | $ | 418,834.05 | $ | 17,344.52 |
| 9/1/2005-9/30/2005 | $ | 346,256.30 | $ | 8,695.39 |
| 10/1/2005-10/31/2005 | $ | 289,208.85 | $ | 12,618.33 |
| 11/1/2005-11/30/2005 | $ | 329,365.95 | $ | 20,718.19 |
| 12/1/2005-12/31/2005 | $ | 360,617.55 | $ | 16,700.03 |
| **TOTAL 2005** | **$** | **4,726,783.00** | **$** | **229,623.23** |

| | | | |
|---|---|---|---|
| 1/1/2006-1/31/2006 | $ | 327,874.90 | $ | 9,421.83 |
| 2/1/2006-2/28/2006 | $ | 263,247.55 | $ | 6,690.48 |
| 3/1/2006-3/31/2006 | $ | 420,768.30 | $ | 21,430.04 |
| 4/1/2006-4/30/2006 | $ | 262,892.90 | $ | 8,597.22 |
| 5/1/2006-5/31/2006 | $ | 344,108.30 | $ | 18,749.22 |
| 6/1/2006-6/30/2006 | $ | 293,387.60 | $ | 11,391.66 |
| 7/1/2006-7/31/2006 | $ | 287,411.90 | $ | 28,853.26 |
| 8/1/2006-8/31/2006 | $ | 325,581.30 | $ | 21,063.45 |
| 9/1/2006-9/30/2006 | $ | 248,119.65 | $ | 8,622.36 |
| 10/1/2006-10/31/2006 | $ | 231,732.05 | $ | 21,471.10 |
| 11/1/2006-11/30/2006 | $ | 195,448.95 | $ | 21,020.58 |
| 12/1/2006-12/31/2006 | $ | 175,502.40 | $ | 8,635.65 |
| **TOTAL 2006** | $ | **3,376,075.80** | $ | **185,946.85** |
| 1/1/2007-1/31/2007 | $ | 248,836.75 | $ | 2,625.70 |
| 2/1/2007-2/28/2007 | $ | 254,367.30 | $ | 21,051.29 |
| 3/1/2007-3/31/2007 | $ | 237,132.00 | $ | 32,598.76 |
| 4/1/2007-4/30/2007 | $ | 143,844.90 | $ | 12,193.61 |
| 5/1/2007-5/31/2007 | $ | 229,950.05 | $ | 16,035.84 |
| 6/1/2007-6/30/2007 | $ | 266,664.50 | $ | 7,516.93 |
| 7/1/2007-7/31/2007 | $ | 245,625.75 | $ | 3,568.03 |
| 8/1/2007-8/31/2007 | $ | 185,246.30 | $ | 9,116.99 |
| 9/1/2007-9/30/2007 | $ | 157,880.00 | $ | 4,161.44 |
| 10/1/2007-10/31/2007 | $ | 125,229.04 | $ | 1,431.02 |
| 11/1/2007-11/30/2007 | $ | 164,293.80 | $ | 8,301.04 |
| 12/1/2007-12/31/2007 | $ | 74,739.30 | $ | 1,921.30 |
| **TOTAL 2007** | $ | **2,333,809.69** | $ | **120,521.95** |
| 1/1/2008-1/31/2008 | $ | 137,931.70 | $ | 3,054.14 |
| 2/1/2008-2/29/2008* | $ | 86,063.90 | $ | 706.37 |
| **TOTAL 2008** (thru 02/08) $ | | **223,995.60** | $ | **3,760.51** |

*estimated fees/expenses

**B.    Explanation of Services Performed.**

**1.    Fact Finding and Preparation of Report.**

Upon his appointment, the Receiver took control of the Receivership Estate's assets and investigated the defendant's prior business dealings in an effort, among other things, to complete the report requested of him by the Court and to locate assets and determine liabilities of the

Receivership Estate.  Each of Northshore's principals invoked their Fifth Amendment privilege and Northshore's few remaining employees were of minimal help.  Kaye Scholer, with the assistance of the Receiver's financial advisors, secured Northshore's property, including its books and records, and undertook an extensive analysis which culminated in the Preliminary Report of Arthur J. Steinberg, Receiver, filed on November 1, 2005 (the "Preliminary Report").[2] Kaye Scholer has continued its factual investigation from time to time as situations have arisen.

> ### 2.    <u>Asset Protection</u>.

Closely aligned to the factual investigation were several matters relating to the protection of the Receivership Estate's assets.

> #### a.    **AusAm Biotechnologies.**  Shortly after the SEC filed its complaint

and TRO, Northshore's principals, along with Dr. Brian Taylor and Dr. David Schwartz, sought to take over the management of AusAm Biotechnologies, Inc. ("AusAm"), a company in which the Receivership Estate had a considerable investment and which owed money to the Receivership Estate by reason of several significant loans.  The Receiver determined that this action was a violation of the TRO and, further, that it was in the best interests of the Receivership Estate to stop the "takeover."  The Receiver's activities were met by resistance consisting of, <u>inter alia</u>, litigation before the District Court, a suit filed in Delaware Chancery Court in direct defiance of the Court's jurisdiction and a request for stay pending appeal, and then an appeal to the United States Court of Appeals for the Second Circuit.  The Receiver

---

[2]    Kaye Scholer prepared the Preliminary Report approximately two months before its filing.  The delay in filing was requested by the United States Attorneys Office so as not to interfere with its ongoing investigation.  District Judge Owen was advised of the request and instructed the Receiver to delay the filing of the Preliminary Report until the date it was actually filed.

prevailed on all matters and was awarded costs and fees in connection with much of the litigation, which costs and fees have been ultimately uncollectible.

       **b.**    **Safe Deposit Box.**  Shortly after his appointment, the Receiver discovered that Robert Wildeman, one of Northshore's principals, had invaded a safe deposit box owned by Northshore and removed certain documents contained therein in violation of the TRO. Kaye Scholer took immediate steps to recover the items removed. Upon reporting these activities to the Court, the Receiver was directed by Judge Owen to prosecute contempt proceedings against Robert Wildeman, and, in addition, Glenn Sherman, who was also deemed to have participated. Kaye Scholer conducted the contempt hearing, a contempt sanction was imposed, and Kaye Scholer was awarded fees and costs which have proved to be uncollectible.

       **c.**    **Circle Trust.** Northshore used amounts from the Ardent Funds[3] to purchase Circle Trust Corporation ("Circle Trust"), a Connecticut trust company, and then utilized substantial amounts from the Ardent Funds to make a required capital contribution to Circle Trust. From the commencement of this receivership proceeding, Circle Trust was facing potential dissolution proceedings from its regulators (the Connecticut Superintendent of Banking). The Receiver and his counsel tried to preserve the going concern value by finding a buyer for Circle Trust, which effort proved unsuccessful. The Receiver did collect approximately $200,000 as a forfeited deposit from a putative buyer. Upon action by Connecticut to dissolve Circle Trust, the Receiver negotiated an allocation regarding ownership of 1,000,000 shares of stock of Startech Environmental Corp. ("Startech") which had been transferred by Northshore as capital in connection with the Circle Trust acquisition, and a resolution of the Receiver's claim in the Circle Trust receivership proceeding.

---

[3]     The "Ardent Funds" are comprised of Ardent Research Partners Ltd. and Ardent Research Partners, L.P.

     **d.**     **Miscellaneous Assets.**  The Receiver and his counsel investigated the assets of the individual defendants to determine whether their assets could be deemed property of the Receivership Estate and held by the Receiver.  As a result, certain personal property including art objects (which objects appeared to have significant value) were seized.  To date, efforts to sell the art have not achieved anticipated values.  Litigation arose between the Receiver and an art dealer regarding a large statue, which ultimately was settled just prior to trial.

     **3.**     **Investor Related Activities.**

Receiver's counsel worked with his financial advisors to create a list of investors and established a bar date for claims and, with the assistance of his financial advisors, reconciled such claims.

Counsel also prepared the Receiver's Equitable Plan of Distribution (the "Plan") which was approved by the Court on July 31, 2006, which established procedures for distributions to investors.  The Receiver has made two distributions to Class 1 Claimants under the Plan and three distributions to Class 2 Claimants under the Plan.

Counsel has answered inquiries from investors on a regular basis.  The Receiver and counsel also have met and conferred regularly with an ad hoc committee of investors and their counsel to keep them informed of developments and to seek their input.  Counsel for this group of large investors has entered an appearance and has been served with relevant pleadings, including fee petitions.

     **4.**     **Management of Investments.**

At the time of his appointment, the Receiver took possession of all of the Ardent Funds' investment portfolio consisting of small cap publicly-traded stocks and small private venture capital positions in emerging technology companies.  The Receiver, counsel and his financial

advisors have worked to monetize these securities and investments in a rational fashion in order to maximize their value. A description of the investments is contained in the Preliminary Report and related Appendix. There are a handful of investments with value which still have not been liquidated. The largest remaining investment consists of public shares of stock in Startech. Counsel is endeavoring to have the Startech shares registered so that the Receiver will be free to dispose of them or distribute them to his investors. The Receiver also has had numerous contacts with other Startech investors and Startech's management regarding Startech's weak performance.

### 5. Litigation.

Other than the litigation related to asset protection discussed above, counsel for the Receiver has engaged in several types of litigation. For purposes hereof, investigations of claims and settlements reached after the threat of litigation will be treated as litigation.

#### a. Claims Against Professionals and Other Miscellaneous Litigation.

The Receiver and counsel examined potential claims against various professionals who had represented Northshore, the Ardent Funds and Francis Saldutti in an effort to determine whether viable claims existed. The Receiver concluded that due in large part to the "imputation" doctrine, there were no viable claims against several professionals. He determined that claims existed against several others and the Receiver and counsel negotiated settlements with those entities, including Robinson & Cole LLP and Schiff Hardin LLP. Final settlements against Goldstein Golub Kessler LLP and RSM McGladrey Inc. also are being finalized for presentation to the Court. Additionally, as set forth in Exhibit 5, the Receiver has commenced, and in certain cases, resolved, other miscellaneous litigation necessary to preserve the Receivership Estate's assets.

**b.    Actions to Recover Improper Redemptions.**

The Receiver and counsel examined transfers to investors which were characterized as redemptions.  While the Receiver recognized that the investors were in most cases victims, nonetheless he believed it was his duty to try and insure equality of distributions among investors.  Thus, he sought to recover distributions which were in excess of the value of the investors' interest at the time of the redemption in question.  As noted in Exhibit 5, numerous settlements have been approved by the Court and several others are currently pending before the Court.  The Receiver's decision to settle many of these cases is based on a variety of factors and circumstances.

**c.    Claims Against the Principals of Northshore.**

As noted in Exhibit 5, the Receiver has pending claims against Northshore's principals. These claims arose out of the Receiver and his counsel's investigation of the circumstances leading to the commencement of this receivership.  The status and detail of these claims are described in further detail in Exhibit 5.

**6.    Cooperation With Governmental Authorities.**

From the inception of this case, the Receiver and counsel have worked with the SEC and the United States Attorney for the Southern District of New York to share with them information gathered by the Receiver and counsel which might be useful in their efforts.

**C.    Open Items.**

The list of pending litigation matters is attached as Exhibit 5. In addition, counsel for the Receiver anticipates additional work in disposing of Receivership Estate assets, including the Startech shares.  Counsel also will be active in finalizing distributions to investors and in communication with investors and governmental agencies.

## II.    MORRIS-ANDERSON AND ASSOCIATES, LTD

Morris-Anderson & Associates, Ltd. ("Morris-Anderson") is one of the financial advisory firms hired by the Receiver.  At the time the Receiver was appointed, Morris-Anderson had been hired by Northshore and its counsel to plan and prepare a bankruptcy filing.   As such Morris-Anderson had valuable knowledge regarding Northshore's structure and financial operations and some familiarity with Northshore's principals.  After determining that it had not been involved in the fraudulent operations of Northshore, the Receiver determined that he would retain Morris-Anderson on a limited basis to assist the Receiver and his main financial advisor, Goldin Associates, L.L.C. ("Goldin") in investigating and developing the basic financial history of Northshore.  Morris-Anderson's professionals in this matter were located in Chicago near Northshore's offices and records, and were thus especially qualified to assist the Receiver on certain tasks.   By utilizing Morris-Anderson's existing knowledge, the Receiver believes he reduced the ultimate cost to the Receivership Estate.

### A.    Itemized Schedule of Fees and Expenses Incurred.

| DATE | FEES | | EXPENSES | |
|---|---|---|---|---|
| 2/15/2005-2/16/2005 | $ | 19,350.00 | $ | 1,667.36 |
| 2/17/2005-2/28/2005 | $ | 28,200.00 | $ | 1,805.31 |
| 3/1/2005-3/31/2005 | $ | 53,850.00 | $ | 507.95 |
| 4/1/2005-4/30/2005 | $ | 47,475.00 | $ | 183.22 |
| 5/1/2005-5/31/2005 | $ | 41,700.00 | $ | 120.80 |
| 6/1/2005-6/30/2005 | $ | 36,900.00 | $ | 140.55 |
| 7/1/2005-7/31/2005 | $ | 31,950.00 | $ | 131.00 |
| 8/1/2005-8/31/2005 | $ | 23,550.00 | $ | 84.00 |
| 9/1/2005-9/30/2005 | $ | 3,300.00 | $ | 27.00 |
| 10/1/2005-10/31/2005 | $ | 15,150.00 | $ | 27.00 |
| 11/1/2005-11/30/2005 | $ | 3,000.00 | $ | 27.80 |
| 12/1/2005-12/31/2005 | $ | 1,050.00 | $ | 47.42 |
| **TOTAL FOR 2005** | **$** | **305,475.00** | **$** | **4,769.41** |
| 1/1/2006-1/31/2006 | $ | 1,350.00 | $ | 10.30 |
| 2/1/2006-2/28/2006 | $ | 6,750.00 | $ | 33.00 |

| | | | |
|---|---|---|---|
| 3/1/2006-3/31/2006 | $ | 8,550.00 | $ | 33.00 |
| 4/1/2006-4/30/2006 | $ | 150.00 | | |
| 5/1/2006-5/31/2006 | $ | - | $ | 15.25 |
| 8/1/2006-8/31/2006 | $ | 1,950.00 | $ | - |
| 9/1/2006-9/30/2006 | $ | 1,650.00 | $ | - |
| 10/1/2006-10/31/2006 | $ | 1,350.00 | $ | - |
| 11/1/2006-11/30/2006 | $ | 900.00 | $ | - |
| 12/1/2006-12/31/2006 | $ | 900.00 | $ | - |
| **TOTAL FOR 2006** | $ | **23,550.00** | $ | **91.55** |
| 1/1/2007-1/31/2007 | $ | 2,250.00 | $ | - |
| 2/1/2007-2/28/2007 | $ | 300.00 | $ | - |
| 3/1/2007-3/31/2007 | $ | 1,050.00 | $ | 22.00 |
| 10/1/2007-10/31/2007 | $ | 1,800.00 | $ | - |
| **TOTAL FOR 2007** | $ | **5,400.00** | $ | **22.00** |

**B.     Explanation of Services Performed.**

Morris-Anderson's activities can be divided into five main categories:

### 1.     Securing Records And Assets And Other Basic Information.

Because Morris-Anderson had been on site at Northshore's three main locations prior to the Receiver's appointment, they were involved in preserving the records of the Receivership Estate, securing assets and interviewing employees.  Morris-Anderson helped the Receiver identify Northshore's related entities, its bank, brokerage and financial institution accounts as well as analyze financial transactions among the related entities.  Morris-Anderson assisted the Receiver in identifying creditors and investors.  The bulk of this work took place in the period February through April 2005.

### 2.     Assistance in Identifying Fraudulent Transactions and the Development of the Preliminary Report.

Because Morris-Anderson had been instrumental in developing certain databases, the Receiver requested and received assistance in analyzing certain transactions by and among

Northshore and individual defendants as well as those between its subsidiary LaSalle Leveraged Fund, LLC ("LaSalle") and outside investors. Finally, Morris-Anderson provided assistance on various discrete tasks related to information it had developed, including assistance with creditor inquiries, assistance with employee issues and miscellaneous financial issues. The bulk of this work was performed from May through August 2005.

### 3.    Assistance with Specific Issues.

Morris-Anderson provided answers to questions relating to investigations of certain specific transactions and complaints against various individuals. The bulk of this work occurred from September through November 2005.

### 4.    Assistance in Further Analysis of Transactions Involving LaSalle Leveraged Fund, LLC.

In bringing litigation relating to transfers between LaSalle and various investors, the Receiver sought Morris-Anderson's assistance as it had developed most of the data relating to those transactions. Morris-Anderson helped develop valuations necessary to analyze these transactions. The bulk of this work occurred from December 2005 through March 2006.

### 5.    Miscellaneous.

From time to time since April 2006 the Receiver has asked Morris-Anderson for additional information. This work is episodic and generally relates to data previously developed by Morris-Anderson.

### C.    Open Items.

There are no open items pending. Should certain litigation matters be set for trial, the Receiver may have need for Morris-Anderson to provide limited assistance with respect to financial matters.

### III.    GOLDIN ASSOCIATES, L.L.C.

Goldin was retained by the Receiver as his principal financial advisor.  As such, Goldin has been involved in virtually all aspects of this case in assisting the Receiver and his counsel.

### A.    Itemized Schedule of Fees and Expenses Incurred.

| DATE | FEES | | EXPENSES | |
|---|---|---|---|---|
| 3/1/2005-3/31/2005 | $ | 55,586.00 | $ | 57.91 |
| 4/1/2005-4/30/2005 | $ | 122,916.50 | $ | 798.54 |
| 5/1/2005-5/31/2005 | $ | 138,281.50 | $ | 1,464.51 |
| 6/1/2005-6/30/2005 | $ | 142,052.00 | $ | 2,219.81 |
| 7/1/2005-7/31/2005 | $ | 60,854.00 | $ | 225.28 |
| 8/1/2005-8/31/2005 | $ | 148,369.00 | $ | 410.16 |
| 9/1/2005-9/30/2005 | $ | 46,334.00 | $ | 205.16 |
| 10/1/2005-10/31/2005 | $ | 73,233.50 | $ | 400.28 |
| 11/1/2005-11/30/2005 | $ | 62,826.00 | $ | 60.99 |
| 12/1/2005-12/31/2005 | $ | 58,134.00 | $ | 58.16 |
| **TOTAL 2005** | $ | **908,586.50** | $ | **5,900.80** |
| 1/1/2006-1/31/2006 | $ | 39,350.00 | $ | 36.79 |
| 2/1/2006-2/28/2006 | $ | 37,410.00 | $ | 22.12 |
| 3/1/2006-3/31/2006 | $ | 33,490.00 | $ | 186.15 |
| 4/1/2006-4/30/2006 | $ | 19,725.00 | $ | 68.50 |
| 5/1/2006-5/31/2006 | $ | 39,135.00 | $ | 68.61 |
| 6/1/2006-6/30/2006 | $ | 39,210.00 | $ | 37.70 |
| 7/1/2006-7/31/2006 | $ | 7,785.00 | $ | 349.69 |
| 8/1/2006-8/31/2006 | $ | 48,087.50 | $ | 409.39 |
| 9/1/2006-9/30/2006 | $ | 21,050.00 | $ | 58.19 |
| 10/1/2006-10/31/2006 | $ | 22,860.00 | $ | 156.30 |
| 11/1/2006-11/30/2006 | $ | 14,660.00 | $ | 32.55 |
| 12/1/2006-12/31/2006 | $ | 8,805.00 | $ | 28.24 |
| **TOTAL 2006** | $ | **331,567.50** | $ | **1,454.23** |
| 1/1/2007-1/31/2007 | $ | 23,357.50 | $ | 76.75 |
| 2/1/2007-2/28/2007 | $ | 21,600.00 | $ | 8.89 |
| 3/1/2007-3/31/2007 | $ | 13,859.00 | $ | 44.14 |
| 4/1/2007-4/30/2007 | $ | 7,124.50 | $ | 27.04 |
| 5/1/2007-5/31/2007 | $ | 9,748.00 | $ | 13.43 |
| 6/1/2007-6/30/2007 | $ | 20,637.50 | $ | 95.85 |
| 7/1/2007-7/31/2007 | $ | 8,430.00 | $ | 10.87 |
| 8/1/2007-8/31/2007 | $ | 7,980.50 | $ | 16.92 |

| | | |
|---|---|---|
| 9/1/2007-9/30/2007 | $ 4,344.50 | $ 8.24 |
| 10/1/2007-10/31/2007 | $ 6,468.50 | $ 46.36 |
| 11/1/2007-11/30/2007 | $ 7,069.00 | $ 2.19 |
| 12/1/2007-12/31/2007 | $ 855.00 | $ 83.65 |
| **TOTAL 2007** | **$ 131,474.00** | **$ 434.33** |
| 1/1/2008-1/31/2008 | $ 522.50 | $ - |
| 2/1/2008-2/29/2008 | $ 8,050.50 | $ 16.56 |
| **TOTAL 2008** (thru 2/08) | **$ 8,573.00** | **$ 16.56** |

**B.**     **Explanation of Services Performed.**

While their work has touched upon all financial aspects of this case, it can be summarized in eight categories.

**1.**     **Due Diligence.**

Goldin's initial due diligence efforts focused on a review of the Ardent Funds' activities, including a review of all financial records, investments made and sold, portfolio investment positions and fund administration and documentation relating to the structure of the various entities.

Goldin also coordinated with respect to the work performed by Morris-Anderson. While Goldin's work in this area continued throughout the case, the bulk of the due diligence work was completed by September 2005. Throughout this engagement, Goldin worked with the Receiver and Morris-Anderson to avoid duplication of effort.

**2.**     **Forensic Analysis.**

Goldin developed a sources and uses analysis of cash received and disbursed by the Ardent Funds. It then worked with Morris-Anderson to integrate the Ardent analysis with a similar analysis of the other Northshore Entities prepared by Morris-Anderson to provide an

analysis of the enterprise as a whole. While issues arise from time to time necessitating a review of particular transactions, the bulk of this work was completed by September 2005.

### 3. Consultation with Respect to Investments.

Goldin has worked with the Receiver to try and maximize the value received for the Receivership Estate's investments. The Receivership Estate held positions in publicly-traded companies and also held a number of small venture capital and other positions in emerging technology companies. Most of the publicly-traded investments had been sold prior to the appointment of the Receiver. However, three remaining investments required substantial work by Goldin: AusAm, Circle Trust and Startech.

AusAm was liquidated in a bankruptcy proceeding in the Southern District of New York and Circle Trust was liquidated by the State of Connecticut Department of Banking in a state court receivership proceeding. The Startech shares are still held by the Receivership Estate and Goldin continues to consult in an effort to liquidate these shares.

The private venture capital positions held by the company required due diligence. Goldin discovered that several listed as active investments were no longer viable. Goldin has assisted in liquidating several of these investments via sales to other investors or through initial public offerings.

### 4. Support for Claims of the Receiver.

Goldin has provided documentation and financial analysis supporting claims the Receiver has brought against other parties, including those against Northshore's principals and recipients of improper redemptions. While the bulk of this work has been completed, additional work is required from time to time.

5.    **Analysis of Claims**.

Goldin generally prepared the financial analysis to defend against the claims made by various entities against the Receivership Estate, including investors and trade claimants.

6.    **Distributions**.

Goldin assisted the Receiver in developing his equitable plan of distribution. Goldin reviewed calculations of distributions from time to time as required.

7.    **Tax Reporting**.

Goldin provided information to the professionals retained by the Receiver to prepare tax returns for the Receivership Estate as required.

8.    **SEC Information/Document Requests**.

From time to time the SEC has requested information and documents from the estate. Goldin assisted the Receiver in responding to these requests.

C.    **Open Items.**

The bulk of Goldin's work is completed. Continuing work with respect to the liquidation of the Startech stock and other smaller investments is anticipated. To the extent open litigation matters go to trial, litigation support and valuation testimony will be necessary. Additionally, some work with respect to distributions and tax filings will be required.

IV.    **JPMORGAN TRUST COMPANY**

A.    **Itemized Schedule of Fees and Expenses Incurred.**

| DATE | FEES | | EXPENSES | |
|------|------|------|------|------|
| 7/1/2005-7/31/2005 | $ | 7,595.25 | $ | 1,291.70 |
| 8/1/2005-8/31/2005 | $ | 3,209.37 | $ | 198.60 |
| 9/1/2005-9/30/2005 | $ | 17,645.88 | $ | 4,075.20 |
| 10/1/2005-10/31/2005 | $ | 2,942.88 | $ | 53.72 |
| 11/1/2005-11/30/2005 | $ | 750.75 | $ | 11,037.97 |
| 12/1/2005-12/31/2005 | $ | 546.00 | $ | 2,733.53 |

| | | | |
|---|---|---|---|
| **TOTAL 2005** | **$** | **32,690.13** | **$ 19,390.72** |
| | | | |
| 1/1/2006-1/31/2006 | $ | 481.00 | $ 1.76 |
| 3/1/2006-3/31/2006 | $ | 1,255.80 | $ 2,860.61 |
| 4/1/2006-4/30/2006 | $ | 4,288.38 | $ 893.97 |
| 5/1/2006-5/31/2006 | $ | 1,252.88 | $ 634.13 |
| 6/1/2006-6/30/2006 | $ | 4,148.63 | $ - |
| 7/1/2006-7/31/2006 | $ | 433.88 | $ 127.12 |
| 8/1/2006-8/31/2006 | $ | 737.75 | $ 1,211.58 |
| | | | |
| **TOTAL 2006** | **$** | **12,598.32** | **$ 5,729.17** |
| | | | |
| 3/1/2007-3/31/2007 | $ | 831.44 | $ 957.70 |
| 6/1/2007-6/30/2007 | $ | 166.50 | $ 28.40 |
| 8/1/2007-8/31/2007 | $ | 303.50 | $ 1,336.36 |
| 11/1/2007-11/30/2007 | $ | 503.88 | $ 1,215.52 |
| | | | |
| **TOTAL 2007** | **$** | **1,805.32** | **$ 3,537.98** |

**B.    Explanation of Services Performed.**

On July 19, 2005, the Court authorized the Receiver to employ JPMorgan Trust Company as the recordation agent for the Receivership Estate. JPMorgan is responsible for the service of required notices to parties in interest and to administer the recordation of proofs of claim filed in the case. As such, JPMorgan's work has been limited to a few discrete projects. They include:

1.    Service of the notice of the last date for filing proofs of claim and proofs of equity interests on each known creditor or equity security holder.

2.    Maintenance of copies of all proofs of claim and all proofs of equity interest that were filed and maintenance of the official mailing list for all claimants.

3.    Service of the Receiver's Preliminary Report.

4.    Service of all interim fee petitions filed by the professionals in this case.

5.    Service of the Receiver's objections to proofs of claim and proofs of interest.

6.    Service of distribution checks to investors.

**C.    Open Items.**

There are no pending open items other than document maintance.  JPMorgan's services will be used as required with respect to additional distributions and service of other documents as needed.

**V.    MAHONEY COHEN & COMPANY**

**A.    Itemized Schedule of Fees and Expenses Incurred.**

| DATE | FEES | | EXPENSES | |
|------|------|--|----------|--|
| 2/1/2006-2/28/2006 | $ | 4,467.50 | | |
| 3/1/2006-3/31/2006 | $ | 5,302.50 | | |
| 4/1/2006-4/30/2006 | $ | 1,703.50 | | |
| 5/1/2006-5/31/2006 | $ | 1,182.50 | | |
| 6/1/2006-6/30/2006 | $ | 2,850.00 | | |
| 7/1/2006-7/31/2006 | $ | 7,602.00 | $ | 35.00 |
| 8/1/2006-8/31/2006 | $ | 14,169.00 | $ | 188.00 |
| 9/1/2006-9/30/2006 | $ | 38,212.00 | $ | 506.00 |
| 10/1/2006-10/31/2006 | $ | 10,792.00 | $ | 525.00 |
| 11/1/2006-11/30/2006 | $ | 248.00 | $ | 1,888.00 |
| 12/1/2006-12/31/2006 | $ | 1,538.00 | $ | 186.00 |
| **TOTAL 2006** | **$** | **88,067.00** | **$** | **3,328.00** |
| | | | | |
| 1/1/2007-1/31/2007 | $ | 949.00 | $ | 164.00 |
| 2/1/2007-2/28/2007 | | | $ | 8.00 |
| 3/1/2007-3/31/2007 | $ | 8,360.00 | $ | 65.00 |
| 4/1/2007-4/30/2007 | $ | 206.50 | $ | 19.00 |
| 5/1/2007-5/31/2007 | $ | 8,985.50 | $ | 94.00 |
| 6/1/2007-6/30/2007 | $ | 14,643.00 | $ | 330.00 |
| 7/1/2007-7/31/2007 | $ | 2,152.50 | $ | 49.46 |
| 8/1/2007-8/31/2007 | $ | 514.50 | $ | 6.00 |
| 12/1/2007-12/31/2007 | $ | 385.50 | $ | 3.00 |
| **TOTAL 2007** | **$** | **36,196.50** | **$** | **738.46** |
| | | | | |
| 1/1/2008-1/31/2008 | $ | 774.00 | $ | 12.00 |
| 2/1/2008-2/29/2008 | $ | 697.00 | $ | 7.00 |
| **TOTAL 2008** (thru 2/08) | **$** | **1,471.00** | **$** | **19.00** |

**B.      Explanation of Services Performed.**

The Receiver is required to prepare certain tax documents relating to the Receivership Estate.    Accordingly, he received Court approval to retain Mahoney Cohen & Company ("Mahoney Cohen") as his tax advisor.  Mahoney Cohen has performed the following services:

    1.      Preparation of Ardent Domestic's Form 1065 and related K-1 schedules for 2004, 2005 and 2006.

    2.      Tax related calculations relating to redemptions and theft losses relating to improper transactions effectuated by Northshore insiders.

    3.      Miscellaneous tax related analysis, including advice with respect to tax notices received by the Receiver.

**C.    Open Items.**

Mahoney Cohen will continue to assist on tax matters as they arise.

# AGGREGATE OF FEES, EXPENSES AND ADMINISTRATIVE EXPENSES BY MONTH

CHART OF ALL FEES AND EXPENSES 2/15/2005-2/29/2008

| | FEES | | EXPENSES | | TOTALS | |
|---|---|---|---|---|---|---|
| **FEB 15 2005-MARCH 31, 2005** | | | | | | |
| KAYE SCHOLER | $ | 584,335.35 | $ | 18,050.22 | $ | 602,385.57 |
| MORRIS ANDERSON | $ | 91,400.00 | $ | 3,980.62 | $ | 95,380.62 |
| GOLDIN ASSOCIATES | $ | 55,586.00 | $ | 57.91 | $ | 55,643.91 |
| | | | | | | |
| **APRIL 2005** | | | | | | |
| KAYE SCHOLER | $ | 780,372.70 | $ | 38,720.61 | $ | 819,093.31 |
| MORRIS ANDERSON | $ | 47,475.00 | $ | 183.22 | $ | 47,658.22 |
| GOLDIN ASSOCIATES | $ | 122,916.50 | $ | 798.54 | $ | 123,715.04 |
| | | | | | | |
| **MAY 2005** | | | | | | |
| KAYE SCHOLER | $ | 702,602.60 | $ | 51,133.86 | $ | 753,736.46 |
| MORRIS ANDERSON | $ | 41,700.00 | $ | 120.80 | $ | 41,820.80 |
| GOLDIN ASSOCIATES | $ | 138,281.50 | $ | 1,464.51 | $ | 139,746.01 |
| ADMIN EXPENSES | | | | | $ | 25,604.53 |
| (Guardian Insurance $15,453.53) | | | | | | |
| (Check Order Fee $41.00) | | | | | | |
| (Re-Build Computer $10,110.00) | | | | | | |
| | | | | | | |
| **JUNE 2005** | | | | | | |
| KAYE SCHOLER | $ | 575,657.80 | $ | 35,196.80 | $ | 610,854.60 |
| MORRIS ANDERSON | $ | 36,900.00 | $ | 140.55 | $ | 37,040.55 |
| GOLDIN ASSOCIATES | $ | 142,052.00 | $ | 2,219.81 | $ | 144,271.81 |
| ADMIN EXPENSES | | | | | $ | 15,296.60 |
| (Rent for Chicago Office $10,000.00) | | | | | | |
| (Check Order Fee $41.00) | | | | | | |
| (Website Maintenance $92.60) | | | | | | |
| (Re-Build Computer $1,145.00) | | | | | | |
| (M&S Movers (sculpture) $4,050.00) | | | | | | |
| | | | | | | |
| **JULY 2005** | | | | | | |
| KAYE SCHOLER | $ | 339,531.85 | $ | 17,308.15 | $ | 356,840.00 |
| MORRIS ANDERSON | $ | 31,950.00 | $ | 131.00 | $ | 32,081.00 |
| GOLDIN ASSOCIATES | $ | 60,854.00 | $ | 225.28 | $ | 61,079.28 |
| JPMORGAN | $ | 8,886.95 | $ | 558.15 | $ | 9,445.10 |
| ADMIN EXPENSES | | | | | $ | 10,299.22 |
| (Guardian Insurance $5,149.51) | | | | | | |
| (Guardian Insurance $5,149.51) | | | | | | |
| | | | | | | |
| **AUGUST 2005** | | | | | | |
| KAYE SCHOLER | $ | 418,834.05 | $ | 17,344.52 | $ | 436,178.57 |
| MORRIS ANDERSON | $ | 23,550.00 | $ | 84.00 | $ | 23,634.00 |
| GOLDIN ASSOCIATES | $ | 148,369.00 | $ | 410.16 | $ | 148,779.16 |

CHART OF ALL FEES AND EXPENSES 2/15/2005-2/29/2008

| | FEES | | EXPENSES | | TOTALS | |
|---|---|---|---|---|---|---|
| JPMORGAN | $ | 3,407.98 | $ | 49.06 | $ | 3,457.04 |
| ADMIN EXPENSES | | | | | $ | 11,759.94 |
| (Wall Street Journal advertisement for bar date notice $11,759.94) | | | | | | |
| | | | | | | |
| | | | | | | |
| **SEPTEMBER 2005** | | | | | | |
| KAYE SCHOLER | $ | 346,256.30 | $ | 8,622.36 | $ | 354,878.66 |
| MORRIS ANDERSON | $ | 3,300.00 | $ | 27.00 | $ | 3,327.00 |
| GOLDIN ASSOCIATES | $ | 46,334.00 | $ | 205.16 | $ | 46,539.16 |
| JPMORGAN | $ | 21,721.08 | $ | 2,499.45 | $ | 24,220.53 |
| ADMIN EXPENSES | | | | | $ | 43,517.81 |
| (Skyline Duplicating $43,517.81) | | | | | | |
| | | | | | | |
| | | | | | | |
| **OCTOBER 2005** | | | | | | |
| KAYE SCHOLER | $ | 289,208.85 | $ | 12,618.33 | $ | 301,827.18 |
| MORRIS ANDERSON | $ | 15,150.00 | $ | 27.00 | $ | 15,177.00 |
| GOLDIN ASSOCIATES | $ | 73,233.50 | $ | 400.28 | $ | 73,633.78 |
| JPMORGAN | $ | 2,996.60 | $ | 53.72 | $ | 3,050.32 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **NOVEMBER 2005** | | | | | | |
| KAYE SCHOLER | $ | 329,365.95 | $ | 20,718.19 | $ | 350,084.14 |
| MORRIS ANDERSON | $ | 3,000.00 | $ | 27.80 | $ | 3,027.80 |
| GOLDIN ASSOCIATES | $ | 62,826.00 | $ | 60.99 | $ | 62,886.99 |
| JPMORGAN | $ | 11,788.72 | $ | 32.87 | $ | 11,821.59 |
| ADMIN EXPENSES | | | | | $ | 23,385.88 |
| (Xact Inc. Data Extraction $23,315.88) | | | | | | |
| (Website maintenance $70.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **DECEMBER 2005** | | | | | | |
| KAYE SCHOLER | $ | 360,617.55 | $ | 16,700.03 | $ | 377,317.58 |
| MORRIS ANDERSON | $ | 1,050.00 | $ | 47.42 | $ | 1,097.42 |
| GOLDIN ASSOCIATES | $ | 58,134.00 | $ | 58.16 | $ | 58,192.16 |
| JPMORGAN | $ | 3,214.44 | $ | 65.09 | $ | 3,279.53 |
| | | | | | | |
| | | | | | | |
| **JANUARY 2006** | | | | | | |
| KAYE SCHOLER | $ | 327,874.90 | $ | 2,625.70 | $ | 330,500.60 |
| MORRIS ANDERSON | $ | 1,350.00 | $ | 10.30 | $ | 1,360.30 |
| GOLDIN ASSOCIATES | $ | 39,350.00 | $ | 36.79 | $ | 39,386.79 |
| JPMORGAN | $ | 482.76 | $ | 1.76 | $ | 484.52 |
| ADMIN EXPENSES | | | | | $ | 2,395.00 |
| (Website maintenance $70.00) | | | | | | |
| (Associated Pension Services, Inc. $2,325.00) | | | | | | |
| | | | | | | |
| | | | | | | |

CHART OF ALL FEES AND EXPENSES 2/15/2005-2/29/2008

| | FEES | | EXPENSES | | TOTALS | |
|---|---|---|---|---|---|---|
| **FEBRUARY 2006** | | | | | | |
| KAYE SCHOLER | $ | 263,247.55 | $ | 6,690.48 | $ | 269,938.03 |
| MORRIS ANDERSON | $ | 6,750.00 | $ | 33.00 | $ | 6,783.00 |
| GOLDIN ASSOCIATES | $ | 37,410.00 | $ | 22.12 | $ | 37,432.12 |
| MAHONEY COHEN | $ | 4,467.50 | $ | - | $ | 4,467.50 |
| | | | | | | |
| | | | | | | |
| **MARCH 2006** | | | | | | |
| KAYE SCHOLER | $ | 420,200.55 | $ | 21,430.04 | $ | 441,630.59 |
| MORRIS ANDERSON | $ | 8,550.00 | $ | 33.00 | $ | 8,583.00 |
| GOLDIN ASSOCIATES | $ | 33,490.00 | $ | 186.15 | $ | 33,676.15 |
| JPMORGAN | $ | 1,255.80 | $ | 2,860.61 | $ | 4,116.41 |
| MAHONEY COHEN | $ | 5,302.50 | $ | - | $ | 5,302.50 |
| ADMIN EXPENSES | | | | | $ | 181.00 |
| (Check order fee $41.00) | | | | | | |
| (Website maintenance $140.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **APRIL 2006** | | | | | | |
| KAYE SCHOLER | $ | 262,719.65 | $ | 8,597.22 | $ | 271,316.87 |
| MORRIS ANDERSON | $ | 150.00 | $ | - | $ | 150.00 |
| GOLDIN ASSOCIATES | $ | 19,725.00 | $ | 68.50 | $ | 19,793.50 |
| JPMORGAN | $ | 4,288.38 | $ | 893.97 | $ | 5,182.35 |
| MAHONEY COHEN | $ | 1,703.50 | $ | - | $ | 1,703.50 |
| ADMIN EXPENSES | | | | | $ | 70.00 |
| (Website maintenance $70.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **MAY 2006** | | | | | | |
| KAYE SCHOLER | $ | 344,108.30 | $ | 18,749.22 | $ | 362,857.52 |
| MORRIS ANDERSON | $ | - | $ | 15.25 | $ | 15.25 |
| GOLDIN ASSOCIATES | $ | 39,135.00 | $ | 68.61 | $ | 39,203.61 |
| JPMORGAN | $ | 1,252.88 | $ | 634.13 | $ | 1,887.01 |
| MAHONEY COHEN | $ | 1,182.50 | $ | - | $ | 1,182.50 |
| ADMIN EXPENSES | | | | | $ | 70.00 |
| (Website maintenance $70.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **JUNE 2006** | | | | | | |
| KAYE SCHOLER | $ | 293,387.60 | $ | 11,391.66 | $ | 304,779.26 |
| GOLDIN ASSOCIATES | $ | 39,210.00 | $ | 37.70 | $ | 39,247.70 |
| JPMORGAN | $ | 4,148.63 | $ | - | $ | 4,148.63 |
| MAHONEY COHEN | $ | 2,850.00 | $ | - | $ | 2,850.00 |
| ADMIN EXPENSES | | | | | $ | 70.00 |
| (Website maintenance $70.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

CHART OF ALL FEES AND EXPENSES 2/15/2005-2/29/2008

| | FEES | | EXPENSES | | TOTALS | |
|---|---|---|---|---|---|---|
| **JULY 2006** | | | | | | |
| KAYE SCHOLER | $ | 287,411.90 | $ | 28,853.26 | $ | 316,265.16 |
| GOLDIN ASSOCIATES | $ | 7,785.00 | $ | 349.69 | $ | 8,134.69 |
| JPMORGAN | $ | 433.08 | $ | 172.12 | $ | 605.20 |
| MAHONEY COHEN | $ | 7,602.00 | $ | 35.00 | $ | 7,637.00 |
| ADMIN EXPENSES | | | | | $ | 3,515.31 |
| (Skyline Duplication $2,042.56) | | | | | | |
| (Paul Chamberlain International-Search on Bridge Banc $1,472.75) | | | | | | |
| | | | | | | |
| | | | | | | |
| **AUGUST 2006** | | | | | | |
| KAYE SCHOLER | $ | 325,581.30 | $ | 21,063.45 | $ | 346,644.75 |
| MORRIS ANDERSON | $ | 1,950.00 | $ | - | $ | 1,950.00 |
| JPMORGAN | $ | 737.75 | $ | 1,211.58 | $ | 1,949.33 |
| MAHONEY COHEN | $ | 14,169.00 | $ | 188.00 | $ | 14,357.00 |
| ADMIN EXPENSES | | | | | $ | 1,070.00 |
| (Website maintenance $70.00) | | | | | | |
| (Keen Consultants, LLC-House Inspection on K. Kelley $1,000.00) | | | | | | |
| | | | | | | |
| **SEPTEMBER 2006** | | | | | | |
| KAYE SCHOLER | $ | 248,119.65 | $ | 8,622.36 | $ | 256,742.01 |
| MORRIS ANDERSON | $ | 1,650.00 | $ | - | $ | 1,650.00 |
| GOLDIN ASSOCIATES | $ | 21,050.00 | $ | 58.19 | $ | 21,108.19 |
| MAHONEY COHEN | $ | 38,212.00 | $ | 506.00 | $ | 38,718.00 |
| ADMIN EXPENSES | | | | | $ | 1,098.58 |
| (Skyline Duplication $1,028.58) | | | | | | |
| (Website maintenance $70.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **OCTOBER 2006** | | | | | | |
| KAYE SCHOLER | $ | 231,732.05 | $ | 21,471.10 | $ | 253,203.15 |
| MORRIS ANDERSON | $ | 1,350.00 | $ | - | $ | 1,350.00 |
| GOLDIN ASSOCIATES | $ | 22,860.00 | $ | 156.30 | $ | 23,016.30 |
| MAHONEY COHEN | $ | 10,792.00 | $ | 525.00 | $ | 11,317.00 |
| ADMIN EXPENSES | | | | | $ | 6,072.00 |
| (Bowne of New York City $6,002.00) | | | | | | |
| (Website maintenance $70.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **NOVEMBER 2006** | | | | | | |
| KAYE SCHOLER | $ | 195,448.95 | $ | 21,020.58 | $ | 216,469.53 |
| MORRIS ANDERSON | $ | 900.00 | $ | - | $ | 900.00 |
| GOLDIN ASSOCIATES | $ | 14,660.00 | $ | 32.55 | $ | 14,692.55 |
| MAHONEY COHEN | $ | 248.00 | $ | 1,888.00 | $ | 2,136.00 |

CHART OF ALL FEES AND EXPENSES 2/15/2005-2/29/2008

| | FEES | | EXPENSES | | TOTALS | |
|---|---|---|---|---|---|---|
| ADMIN EXPENSES | | | | | $ | 10,788.25 |
| (Associated Pension Services, Inc. $1,745.00) | | | | | | |
| (Bowne of New York City $7,651.00) | | | | | | |
| (TSG Reporting $1,392.25) | | | | | | |
| | | | | | | |
| | | | | | | |
| **DECEMBER 2006** | | | | | | |
| KAYE SCHOLER | $ | 175,502.40 | $ | 8,635.65 | $ | 184,138.05 |
| MORRIS ANDERSON | $ | 900.00 | $ | - | $ | 900.00 |
| GOLDIN ASSOCIATES | $ | 8,805.00 | $ | 28.24 | $ | 8,833.24 |
| MAHONEY COHEN | $ | 1,538.00 | $ | 186.00 | $ | 1,724.00 |
| ADMIN EXPENSES | | | | | $ | 3,072.31 |
| (Illinois Dept of Revenue $378.02) | | | | | | |
| (Serving by Irving, Inc. $1,750.00) | | | | | | |
| (Skyline Duplicating $944.29) | | | | | | |
| | | | | | | |
| | | | | | | |
| **JANUARY 2007** | | | | | | |
| KAYE SCHOLER | $ | 248,836.75 | $ | 2,625.70 | $ | 251,462.45 |
| MORRIS ANDERSON | $ | 2,250.00 | $ | - | $ | 2,250.00 |
| GOLDIN ASSOCIATES | $ | 23,357.50 | $ | 76.75 | $ | 23,434.25 |
| MAHONEY COHEN | $ | 949.00 | $ | 164.00 | $ | 1,113.00 |
| ADMIN EXPENSES | | | | | $ | 140.00 |
| (Website maintenance $140.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **FEBRUARY 2007** | | | | | | |
| KAYE SCHOLER | $ | 254,367.30 | $ | 21,006.83 | $ | 275,374.13 |
| MORRIS ANDERSON | $ | 300.00 | $ | - | $ | 300.00 |
| GOLDIN ASSOCIATES | $ | 21,600.00 | $ | 8.89 | $ | 21,608.89 |
| MAHONEY COHEN | $ | - | $ | 8.00 | $ | 8.00 |
| ADMIN EXPENSES | | | | | $ | 70.00 |
| (Website maintenance $70.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **MARCH 2007** | | | | | | |
| KAYE SCHOLER | $ | 237,132.00 | $ | 32,598.76 | $ | 269,730.76 |
| MORRIS ANDERSON | $ | 1,050.00 | $ | 22.00 | $ | 1,072.00 |
| GOLDIN ASSOCIATES | $ | 13,859.00 | $ | 44.14 | $ | 13,903.14 |
| JPMORGAN | $ | 831.44 | $ | 957.70 | $ | 1,789.14 |
| MAHONEY COHEN | $ | 8,360.00 | $ | 65.00 | $ | 8,425.00 |
| ADMIN EXPENSES | | | | | $ | 740.00 |
| (Bowne of New York City $740.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **APRIL 2007** | | | | | | |
| KAYE SCHOLER | $ | 143,844.90 | $ | 12,193.61 | $ | 156,038.51 |
| GOLDIN ASSOCIATES | $ | 7,124.50 | $ | 27.04 | $ | 7,151.54 |
| MAHONEY COHEN | $ | 206.50 | $ | 19.00 | $ | 225.50 |

CHART OF ALL FEES AND EXPENSES 2/15/2005-2/29/2008

| | FEES | | EXPENSES | | TOTALS | |
|---|---|---|---|---|---|---|
| **MAY 2007** | | | | | | |
| KAYE SCHOLER | $ | 229,950.05 | $ | 16,035.84 | $ | 245,985.89 |
| GOLDIN ASSOCIATES | $ | 9,748.00 | $ | 13.43 | $ | 9,761.43 |
| MAHONEY COHEN | $ | 8,985.50 | $ | 94.00 | $ | 9,079.50 |
| ADMIN EXPENSES | | | | | $ | 140.00 |
| (Website maintenance $70.00) | | | | | | |
| (Website maintenance $70.00) | | | | | | |
| | | | | | | |
| **JUNE 2007** | | | | | | |
| KAYE SCHOLER | $ | 266,664.50 | $ | 7,516.93 | $ | 274,181.43 |
| GOLDIN ASSOCIATES | $ | 20,637.50 | $ | 95.85 | $ | 20,733.35 |
| JPMORGAN | $ | 166.50 | $ | 28.40 | $ | 194.90 |
| MAHONEY COHEN | $ | 14,643.00 | $ | 330.00 | $ | 14,973.00 |
| ADMIN EXPENSES | | | | | $ | 1,140.00 |
| (Website maintenance $140.00) | | | | | | |
| (Appraisal of Saldutti residence $1,000.00) | | | | | | |
| **JULY 2007** | | | | | | |
| KAYE SCHOLER | $ | 245,625.75 | $ | 3,568.03 | $ | 249,193.78 |
| MAHONEY COHEN | $ | 2,152.50 | $ | 49.46 | $ | 2,201.96 |
| | | | | | | |
| | | | | | | |
| **AUGUST 2007** | | | | | | |
| KAYE SCHOLER | $ | 185,246.30 | $ | 9,116.99 | $ | 194,363.29 |
| GOLDIN ASSOCIATES | $ | 7,980.50 | $ | 16.92 | $ | 7,997.42 |
| JPMORGAN | $ | 303.50 | $ | 1,136.36 | $ | 1,439.86 |
| MAHONEY COHEN | $ | 514.50 | $ | 6.00 | $ | 520.50 |
| ADMIN EXPENSES | | | | | $ | 70.00 |
| (Website maintenance $70.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **SEPTEMBER 2007** | | | | | | |
| KAYE SCHOLER | $ | 157,880.00 | $ | 4,161.44 | $ | 162,041.44 |
| GOLDIN ASSOCIATES | $ | 4,344.50 | $ | 8.24 | $ | 4,352.74 |
| ADMIN EXPENSES | | | | | $ | 70.00 |
| (Website maintenance $70.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **OCTOBER 2007** | | | | | | |
| KAYE SCHOLER | $ | 125,229.04 | $ | 1,431.02 | $ | 126,660.06 |
| MORRIS ANDERSON | $ | 1,800.00 | $ | - | $ | 1,800.00 |
| GOLDIN ASSOCIATES | $ | 6,468.50 | $ | 46.36 | $ | 6,514.86 |
| ADMIN EXPENSES | | | | | $ | 70.00 |
| (Website maintenance $70.00) | | | | | | |
| | | | | | | |
| | | | | | | |

CHART OF ALL FEES AND EXPENSES 2/15/2005-2/29/2008

|  | FEES | | EXPENSES | | TOTALS | |
|---|---|---|---|---|---|---|
| **NOVEMBER 2007** | | | | | | |
| KAYE SCHOLER | $ | 164,293.80 | $ | 8,301.04 | $ | 172,594.84 |
| GOLDIN ASSOCIATES | $ | 7,069.00 | $ | 2.19 | $ | 7,071.19 |
| JPMORGAN | $ | 503.88 | $ | 1,215.52 | $ | 1,719.40 |
| ADMIN EXPENSES | | | | | $ | 1,630.46 |
| (U.S. Trustee $1,277.87) | | | | | | |
| (Check order fee $41.00) | | | | | | |
| (Website maintenance $70.00) | | | | | | |
| (Paquette et associes, sanc(service on Fondation Bombardier in Canada) $241.59) | | | | | | |
| | | | | | | |
| | | | | | | |
| **DECEMBER 2007** | | | | | | |
| KAYE SCHOLER | $ | 74,739.30 | $ | 1,921.30 | $ | 76,660.60 |
| GOLDIN ASSOCIATES | $ | 855.00 | $ | 83.65 | $ | 938.65 |
| MAHONEY COHEN | $ | 385.50 | $ | 3.00 | $ | 388.50 |
| ADMIN EXPENSES | | | | | $ | 3,300.00 |
| (Website maintenance $70.00) | | | | | | |
| (Bowne of New York City $2,780.00) | | | | | | |
| (Associated Pension Services, Inc. $450.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **JANUARY 2008** | | | | | | |
| KAYE SCHOLER | $ | 137,931.70 | $ | 3,054.14 | $ | 140,985.84 |
| GOLDIN ASSOCIATES | $ | 522.50 | $ | - | $ | 522.50 |
| MAHONEY COHEN | $ | 774.00 | $ | 12.00 | $ | 786.00 |
| ADMIN EXPENSES | | | | | $ | 70.00 |
| (Website maintenance $70.00) | | | | | | |
| | | | | | | |
| | | | | | | |
| **FEBRUARY 2008** | | | | | | |
| KAYE SCHOLER * | $ | 86,063.90 | $ | 706.37 | $ | 86,770.27 |
| GOLDIN ASSOCIATES | $ | 8,050.50 | $ | 16.56 | $ | 8,067.06 |
| MAHONEY COHEN | $ | 697.00 | $ | 7.00 | $ | 704.00 |
| ADMIN EXPENSES | | | | | $ | 140.00 |
| (Website maintenance $140.00) | | | | | | |
| | | | | | | |
| **TOTALS** | $ | 12,500,186.46 | $ | 568,526.36 | $ | 13,234,559.71 |
| | | | | | | |
| * estimated fees and expenses | | | | | | |

31616978.xls