KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Telephone: (212) 836-8000
Paul J. Curran (PC-9851)
Karin E. Garvey (KG-7771)

KAYE SCHOLER LLC
Three First National Plaza
70 West Madison Street
Suite 4100
Chicago, IL 60602-4231
Telephone: (312) 583-2300
Sheldon L. Solow, Esq.
Michael D. Messersmith, Esq.

*Counsel for Arthur Steinberg, as Receiver
for Northshore Asset Management, LLC, Ardent
Research Partners L.P., Ardent Research Partners
Ltd., and Saldutti Capital Management, L.P.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
SECURITIES AND EXCHANGE COMMISSION,                 :
                                                    :
                                                    :
                        Plaintiff,                  :
                                                    :     Civil Action No.
            -against-                               :     05-CV-2192 (WHP)
                                                    :
NORTHSHORE ASSET MANAGEMENT, LLC, et al.,           :
                                                    :
                        Defendants.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
ARTHUR STEINBERG, as Receiver for                   :
Northshore Asset Management, LLC, et al.,           :
                                                    :
                                                    :
                        Plaintiff,                  :
                                                    :     Civil Action No.
            -against-                               :     06-CV-5024 (WHP)
                                                    :
UNIVERSAL GENESIS STRATEGIC                         :
HOLDINGS, INC. et al.,                              :

```
                                          :
                    Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
ARTHUR STEINBERG, as Receiver for         :
Northshore Asset Management, LLC, et al., :
                                          :
                    Plaintiff,            :
                                          :     Civil Action No.
          -against-                       :     06-CV-5564 (WHP)
                                          :
LEO SPHIZ,                                :
                                          :
                    Defendant.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
ARTHUR STEINBERG, as Receiver for         :
Northshore Asset Management, LLC, et al., :
                                          :
                    Plaintiff,            :
                                          :     Civil Action No.
          -against-                       :     06-CV-5565 (WHP)
                                          :
RICHARD WHARTON,                          :
                                          :
                    Defendant.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
ARTHUR STEINBERG, as Receiver for         :
Northshore Asset Management, LLC, et al., :
                                          :
                    Plaintiff,            :
                                          :     Civil Action No.
          -against-                       :     06-CV-5566 (WHP)
                                          :
JIM PORTER,                               :
                                          :
                    Defendant.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
ARTHUR STEINBERG, as Receiver for                   :
Northshore Asset Management, LLC, et al.,           :
                                                    :
                            Plaintiff,              :
                                                    :        Civil Action No.
                    -against-                        :       06-CV-5567 (WHP)
                                                    :
MELVIN NEWMAN,                                      :
                                                    :
                            Defendant.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
ARTHUR STEINBERG, as Receiver for                   :
Northshore Asset Management, LLC, et al.,           :
                                                    :
                            Plaintiff,              :
                                                    :        Civil Action No.
                    -against-                        :       06-CV-7770 (WHP)
                                                    :
WALTER SCHWAB,                                      :
                                                    :
                            Defendant.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
ARTHUR STEINBERG, as Receiver for                   :
Northshore Asset Management, LLC, et al.,           :
                                                    :
                            Plaintiff,              :
                                                    :        Civil Action No.
                    -against-                        :       07-CV-1001 (WHP)
                                                    :
GLENN SHERMAN, et al.,                              :
                                                    :
                            Defendants.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
ARTHUR STEINBERG, as Receiver for                 :
Northshore Asset Management, LLC, et al.,          :
                                                  :
                              Plaintiff,           :
                                                  :      Civil Action No.
                 -against-                         :      07-CV-1208 (WHP)
                                                  :
BLOOMBERG, L.P. et al.,                            :
                                                  :
                              Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
ARTHUR STEINBERG, as Receiver for                 :
Northshore Asset Management, LLC, et al.,          :
                                                  :
                              Plaintiff,           :
                                                  :      Civil Action No.
                 -against-                         :      07-CV-1212 (WHP)
                                                  :
BOMBARDIER TRUST (CANADA) et al.,                  :
                                                  :
                              Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
ARTHUR STEINBERG, as Receiver for                 :
Northshore Asset Management, LLC, et al.,          :
                                                  :
                              Plaintiff,           :
                                                  :      Civil Action No.
                 -against-                         :      07-CV-1217 (WHP)
                                                  :
FONDATION J. ARMAND BOMBARDIER,                    :
                                                  :
                              Defendant.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
ARTHUR STEINBERG, as Receiver for                         :
Northshore Asset Management, LLC, et al.,                  :
                                                          :
                              Plaintiff,                   :
                                                          :      Civil Action No.
             -against-                                     :      07-CV-4832 (WHP)
                                                          :
JOEL ASH,                                                 :
                                                          :
                              Defendant.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
ARTHUR STEINBERG, as Receiver for                         :
Northshore Asset Management, LLC, et al.,                  :
                                                          :
                              Plaintiff,                   :
                                                          :      Civil Action No.
             -against-                                     :      07-CV-4833 (WHP)
                                                          :
STEPHEN A. ALDERMAN,                                      :
                                                          :
                              Defendant.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## MOTION OF ARTHUR STEINBERG, RECEIVER FOR NORTHSHORE ASSET MANAGEMENT, LLC, ET AL., FOR AN ORDER REQUIRING REIMBURSEMENT AND AN ACCOUNTING

# TABLE OF CONTENTS

Page

FACTS ................................................................................................................ 7

    Terms of the Escrow Agreement ........................................................... 7

    Funding of the Escrow Agreement ........................................................ 9

    Further Communications with Saldutti and Stillman & Friedman ........... 9

    Excessive Withdrawals from the Escrow Agreement ............................. 10

ARGUMENT ..................................................................................................... 13

RELIEF SOUGHT ............................................................................................. 18

NOTICE AND PRIOR APPLICATIONS ........................................................... 19

# **TABLE OF AUTHORITIES**

## **CASES**

Page(s)

*99 Commercial St., Inc. v. Goldberg,*
    811 F. Supp. 900 (S.D.N.Y. 1993)......................................................................14

*Akivis v. Brecher,*
    128 Misc. 2d 965 (N.Y. Sup. Ct. Kings Cty. 1985).....................................15, 18

*Earle v. Gangadeen,*
    N.Y.L.J., Mar. 19, 2003 (N.Y. Sup. Ct. March 19, 2003) ...............................15

*Entm't & Amusements of Ohio, Inc. v. Barnes,*
    49 Misc. 2d 316 (Sup. Ct. Onondaga Cty. 1966).......................................17, 18

*Farago v. Burke,*
    262 N.Y. 229 (1933) .........................................................................................16

*George A. Fuller Co. v. Alexander & Reed,*
    760 F. Supp. 381 (S.D.N.Y. 1991)...........................................................14, 16, 18

*Gershen v. Gershen,*
    6 A.D.2d 862 (1st Dep't 1958) ........................................................................17

*Grinblat v. Taubenblat,*
    107 A.D.2d 735 (2d Dep't 1985) ......................................................................17

*Helman v. Dixon,*
    71 Misc. 2d 1057 (Civ. Ct. Queens Cty. 1972) ...............................................15

*Miller v. J.A. Keeffe, P.C.,*
    276 A.D.2d 757 (2d Dep't 2000) ......................................................................17

*Nat'l Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn,*
    165 Misc. 2d 539 (N.Y. Sup. Ct. N.Y. Cty. 1994), *aff'd,* 227 A.D.2d
    106 (1st Dep't 1996) ...................................................................................14, 17

*T.T.S.G., Inc. v. Kubic,*
    226 A.D.2d 132 (1st Dep't 1996) .....................................................................14

*Zimmer v. Wells Mgmt. Corp.,*
    348 F. Supp. 540 (S.D.N.Y. 1972).....................................................................14

Page(s)

**STATUTES**

Code of Professional Responsibility D.R. 9-102(c)(3).................................................14

Code of Professional Responsibility D.R. 9-102(d)(1)................................................16

Arthur Steinberg, the court-appointed receiver ("Receiver") for corporate defendants Northshore Asset Management, LLC, Ardent Research Partners L.P., Ardent Research Partners, Ltd., and Saldutti Capital Management, L.P., by his undersigned counsel, hereby files his motion ("Motion") for an order requiring (a) payment to the Clerk of the Court for deposit into an interest-bearing account with the Court Registry Investment System (which will act as reimbursement to the escrow account ("Escrow Account")) of an amount to be determined but in no event less than $378,658.35, plus interest that would have been earned on the money had it remained in the Escrow Account; and (b) an accounting, certified under penalty of perjury by both Francis Saldutti ("Saldutti") and Julian Friedman, Esq. ("Friedman"), and the production of back-up records regarding all of the requests made for disbursements to Saldutti, the depositor, the distributions made by Stillman & Friedman, P.C. ("Stillman & Friedman"),[1] the escrow agent, and the expenditures of those funds by Saldutti, both for legal and non-legal items, so that the Receiver can determine the amount of funds in addition to the $378,658.35 which should be paid to the Clerk of the Court for deposit into an interest-bearing account with the Court Registry Investment System (which will act as reimbursement to the Escrow Account).

In evaluating the record and preparing this submission, counsel for the Receiver has consulted with the SEC.  The Receiver's understanding is that, although the SEC will be making its own submission, the Receiver's and the SEC's positions are generally consistent.  The Receiver's Motion covers the terms of the agreement, the violations thereof and the precise

---

[1]    The Stillman & Friedman firm is now known as Stillman, Friedman & Schectman, P.C., but, to be consistent with the Escrow Agreement, this Motion will refer to the firm as "Stillman & Friedman."

amounts due to be reimbursed as a result of those violations.  We understand that the SEC's motion will go beyond that of the Receiver's and will seek additional remedies, some of which, such as requiring additional financial disclosures, are beyond the power of the Receiver to seek but are within the SEC's purview.

## FACTS

### Terms of the Escrow Agreement

1.      The escrow agreement ("Escrow Agreement") at issue in this Motion was signed on August 31, 2005, presented to the Court on September 26, 2005 and approved by order dated September 29, 2005.  A copy of the Escrow Agreement, which was received into evidence at the April 24, 2008 hearing before this Court ("Hearing") as Receiver Exhibit 1, is attached as Exhibit 1.

2.      The Escrow Agreement names Stillman & Friedman, P.C. ("Stillman & Friedman") as the escrow agent.

3.      The Escrow Agreement provides, among other things, that Saldutti would place $4,112,485.65 in escrow and that he would not divest or encumber his principal residence in Pound Ridge, New York.  (Exhibit 1 at paragraph 2.)

4.      With respect to the distribution of funds, the Escrow Agreement provides: "Until the Termination Date (as hereinafter defined), the funds in the Escrow Account shall be distributed according to the following instructions:  (a) Escrow Agent shall distribute funds to the Depositor so as to permit Depositor to pay the recurring expenses as set forth in Exhibit A annexed hereto.  Depositor agrees to disburse all funds received pursuant to this subparagraph 4(a) only in accordance with Exhibit A.  (b) In the event that Depositor has a need for funds for a purpose not set forth in Exhibit A annexed hereto, Escrow Agent and/or Depositor shall notify

[the SEC and the Receiver who will have the opportunity to object] . . . ."  (Exhibit 1 at paragraph 4.)

5.    Exhibit A to the Escrow Agreement lists thirteen "Monthly Expenses" and one "Non-Monthly Item."  All of the expenses listed in Exhibit A, with one exception, are specific dollar limitations, or caps, for each listed category.  For example, "Real Estate Taxes" are listed at $5,300 per month, and "Automobile and Commutation Expenses" are listed at $500 per month.  The one exception is "Legal Fees" which are listed at $7,500 - $9,000, which amount is specifically stated to be an estimate that depends on "Saldutti's involvement in any future litigation and the extent to which he may need counsel in dealing with the Receiver."  (Exhibit 1 at Exhibit A, FN 2.)

6.    Thus, other than the legal fees, which the Receiver understood could vary, each other expense listed in Exhibit A is capped at a precise amount for any month.  More specifically, the Escrow Agreement caps Saldutti's total monthly withdrawals at no greater than $40,025 per month (not including legal fees), and it caps each individual category of monthly expense at a precise amount, as noted above and as set forth in Exhibit A.  In fact, at the Hearing, Friedman acknowledged that Stillman & Friedman would have to tell the Receiver if Saldutti requested more than the $1,000 listed for "Miscellaneous" monthly expenses in any given month.  A copy of pertinent pages of the Hearing transcript is attached as Exhibit 2.  (*See id.* at 156:2-8.)

7.    The Escrow Agreement does not contain any provision allowing Saldutti to average his monthly expenses or accrue money from one month to the next (for example, not to withdraw anything in January for "Automobile and Commutation Expenses" and then to

withdraw double the amount listed in Exhibit A in February), as Friedman acknowledged.  (*See* Exhibit 2 at 167:6-9.)

        8.     The Escrow Agreement does not contain any provision allowing Saldutti to withdraw more money due to inflation or cost of living increases, as Friedman acknowledged at the Hearing.  (*See* Exhibit 2 at 158:17-19; 209:22-24.)

        9.     The clear import of Exhibit A and the expectation of the Receiver and Kaye Scholer was that Saldutti could only spend money from the Escrow Account in accordance with the amounts listed in Exhibit A.  Otherwise, the amounts listed would have no meaning.

Funding of the Escrow Agreement

        10.     On October 22, 2005, Stillman & Friedman informed Kaye Scholer via email that the Escrow Account had been funded with $3,891,000.  On October 24, 2005, Kaye Scholer inquired via email as to why the account had not been funded with the full $4,112,485.65 listed in the Escrow Agreement.  On November 23, 2005, Stillman & Friedman replied to Kaye Scholer via email explaining the discrepancy.  A copy of the emails, which were received into evidence at the Hearing as Defendant's Exhibit M, are attached as Exhibit 3.

Further Communications with Saldutti and Stillman & Friedman

        11.     On February 13, 2007, the Receiver filed his complaint against Kevin Kelley, Glenn Sherman, Robert Wildeman and Saldutti.

        12.     On March 2, 2007, the Receiver and Saldutti entered into a stipulation agreeing that Saldutti would place into escrow all proceeds from any sale of stock owned by Saldutti in a company called DoubleTake.

        13.     In the spring of 2007, the Receiver and Kaye Scholer requested that Stillman & Friedman provide the Receiver with an updated financial statement and that it disclose the amount held in the Escrow Account.

14.     On May 14, 2007, Stillman & Friedman replied via email.  Friedman, of Stillman & Friedman, informed Kaye Scholer that any new Saldutti financial statement would be identical to the one dated March 31, 2005.  Friedman further stated that the balance of the Escrow Account was $2,775,187.37, attributing the current diminished balance to "expenditures permitted by the Escrow Agreement."  A copy of the email, which was received into evidence at the Hearing as Receiver Exhibit 2, is attached as Exhibit 4.

15.     Upon receipt of the May 14, 2007 email, counsel for the Receiver notified both the Receiver and the SEC.  Almost immediately thereafter, the Receiver made the judgment, for the reasons set forth in the next paragraph, to avoid satellite litigation regarding the escrow and directed counsel to begin work on a motion for summary judgment.  In that motion, the Receiver informed the Court that the Escrow Account had been significantly depleted.  The partial summary judgment motion was filed on June 25, 2007 and was fully briefed by August 29, 2007.  Oral argument was held on September 6, 2007 and the matter was *sub judice* until this Court granted the Receiver's motion for partial summary judgment with respect to count 44 (conversion) and denied at this time with respect to count 49 (unjust enrichment) at a hearing on March 20, 2008 and in an Order dated March 21, 2008.

16.     At the time the Receiver filed for summary judgment, the Receiver and Kaye Scholer did not seek further relief, such as the imposition of prejudgment attachment, because they did not believe that such relief would be granted based on the difficulty of obtaining prejudgment attachment, their perception that Judge Owen was unlikely to take action against Saldutti and the fact that the SEC had not sought an asset freeze.

Excessive Withdrawals from the Escrow Agreement

17.     The March 12, 2008 Friedman affidavit ("Friedman Affidavit") demonstrated to the Receiver that Stillman & Friedman and Saldutti had violated the Escrow

Agreement..  A copy of the Friedman Affidavit, which was received into evidence at the Hearing

as Receiver Exhibit 3, is attached as Exhibit 5.

        18.     The most obvious violations of the Escrow Agreement are made plain on

the face of the Friedman Affidavit.  As is detailed in the "Saldutti Escrow Account Disbursement

Schedule," there are twenty months in which more than $40,025 was taken from the Escrow

Account for non-legal fee expenses.  (*See* Exhibit 5 at 3.)  In fact, Friedman acknowledged at the

Hearing that Stillman & Friedman disbursed more than $40,025 for non-legal fee expenses in

certain months.  (*See* Exhibit 2 at 147:19-23.)  The "Balance of distribution" column, which

indicates amounts distributed in excess of legal fees, shows sixteen months in which more than

$40,025 was disbursed for non-legal fee expenses, and footnote 2 describes four additional

months in which Saldutti took more than $40,025 (in November 2005, he took $50,000, and in

the period between July 21, 2005 and October, 25, 2005, he spent an average of $49,448.67 per

month).[2]  (*See* Exhibit 5 at 3; *id.* at 3, n.2.)  Thus, adding up the amounts in excess of $40,025 for

---

[2]      In contrast to the months listed in the chart, Friedman has provided no breakdown with

respect to  what the $50,000 was spent on in November 2005.  In fact, in footnote 2,

Friedman simply says that it was for "expenses."  (*See* Exhibit 5 at 3, footnote 2.)  Thus,

it is entirely possible that more than $9,975 (*i.e.*, the difference between the $50,000

taken and the maximum cap of $40,025) should be reimbursed.  Nor, does he break down

what was spent each month between July 21, 2005 and October 25, 2005.  Thus, without

additional evidence, it is unclear exactly how great the overages were.  Therefore, by this

Motion, the Receiver only seeks reimbursement of the amount by which Saldutti's

withdrawals exceeded $40,025 -- $9,975 for November and $28,271 for July 21 through

(continued...)

each of the twenty months, it is clear that Saldutti overdrew on the Escrow Account by at least $378,658.35, plus interest that would have been earned on the money had it remained in the Escrow Account.[3] (*See* Exhibit 5 at 3.)

        19.    The overdraft amount is most likely greater than $378,658.35 (plus interest) because the violations go beyond the twenty months of overdrafts.  In addition, the Escrow Agreement was violated each time a withdrawal was made for a specific line item that went beyond the cap amount listed in Exhibit A for that line item.  For instance, as Saldutti explained at the Hearing, his health insurance bills were lower than the $3,000 per month amount listed in Exhibit A to the Escrow Agreement.  (*See* Exhibit 2 at 191:14-25.)  Thus, Saldutti was not permitted to withdraw $3,000 each month for health insurance during the time when his monthly insurance bills were less than that amount.  Similarly, as Saldutti explained at the Hearing, one of his daughters graduated from college in 2006 and one in 2007.  (*See* Exhibit 2 at 192:1-9.)  Thus, after the final tuition bills were paid, Saldutti was no longer permitted to withdraw money each month for tuition, making the total maximum allowable monthly withdrawal less than $40,025.  But, without more information regarding when those final bills

---

October 25-- and reserves the right to seek an additional amount once the accounting and back-up records are provided to and reviewed by him.

[3]    Even if, contrary to the terms of the Escrow Agreement, Saldutti were permitted to accrue funds and thereby take less than $40,025 out in some months and more than $40,025 out in other months, Saldutti has still overdrawn on the Escrow Account by at least $174,342.41.

were paid as well as itemizations of other bills, at this point the Receiver cannot state exactly how much the additional excess withdrawals were.[4]

## **ARGUMENT**

20.    "To achieve the purposes for which an escrow is created, the escrow holder has a duty to adhere to the terms of the escrow agreement. If an escrow holder breaches its duty to adhere to the terms of the agreement, the holder is subject to liability to parties for whose benefit the escrow was created for loss caused by the holder's failure to adhere to the terms of the agreement. The stringency of an escrow holder's duty of compliance provides security to parties who structure transactions that involve a risk of nonconsummation." Restatement (Third) of Agency § 8.09 cmt. d (2006).

21.    The facts, as described above, make plain that Stillman & Friedman and Saldutti violated the Escrow Agreement.  Saldutti violated the Escrow Agreement by requesting and withdrawing from the Escrow Account more money that he was entitled to each month, and Stillman & Friedman violated the Escrow Agreement by disbursing funds in excess of the amounts permitted under Exhibit A and additionally failed to meet its obligations as escrow agent because of its failure to account properly for the funds requested by Saldutti.

22.    The law imposes strict fiduciary obligations on escrow agents to act as trustees for both parties to the escrow agreement.  "From the time the deposit is made the escrow

---

[4]    Because the Receiver does not know the exact amount of the item overdrafts, in calculating the $378,658.35 (plus interest) that was overdrawn on the Escrow Account, the Receiver has presumed that Saldutti was entitled to $40,025 per month during the entire existence of the Escrow Agreement, even though that is not the case.

agent becomes the trustee of both the party making the same and the one for whose benefit it is made . . . . [A]s fiduciary the defendant owed plaintiff the highest kind of loyalty and to take such actions as may be necessary to protect any party with a beneficial interest in the escrow fund." *Nat'l Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn*, 165 Misc. 2d 539, 551 (N.Y. Sup. Ct. N.Y. Cty. 1994), *aff'd*, 227 A.D.2d 106 (1st Dep't 1996) (quotations omitted); *see also 99 Commercial St., Inc. v. Goldberg*, 811 F. Supp. 900, 906 (S.D.N.Y. 1993) ("The escrow agent is, in effect, agent to both parties, and holds the instruments for both parties. Accordingly, the escrow agent acts for both parties and, by definition, on behalf of both parties."); *George A. Fuller Co. v. Alexander & Reed*, 760 F. Supp. 381, 386 (S.D.N.Y. 1991) ("New York law makes the despositary [escrow agent] a trustee for both parties. Specifically, the law regards the escrow relationship as a fiduciary one.") (quotations and citations omitted); *T.T.S.G., Inc. v. Kubic*, 226 A.D.2d 132, 133 (1st Dep't 1996) ("As escrow agent, defendant owes a fiduciary duty to the parties to the transaction.") (citation omitted).

   23. Practically speaking, this means that "[t]he escrow agent is obligated to exercise the degree of care which a prudent person of discretion and intelligence would employ in their own like affairs." *Nat'l Union Fire Ins. Co.*, 165 Misc. 2d at 551 (citations omitted). And, the escrow agent is jointly and severally liable with the recipient of the escrow assets. *See Zimmer v. Wells Mgmt. Corp.*, 348 F. Supp. 540, 543 (S.D.N.Y. 1972).

   24. At the outset, prior to distributing funds, an escrow agent must inquire as to the purpose for which funds from the escrow account are being sought. Under Code of Professional Responsibility D.R. 9-102(c)(3) (22 NYCRR 12000.46[c][3]), a lawyer shall "[m]aintain complete records of all funds, securities, and other properties of a client or third

person coming into the possession of the lawyer and render appropriate accounts to the client or third person regarding them."

25.     The case law is consistent with this disciplinary rule.  *See*, *e.g.*,  *Akivis v. Brecher*, 128 Misc. 2d 965, 966 (N.Y. Sup. Ct. Kings Cty. 1985) (holding an escrow agent liable for breach of contract and fiduciary duty and stating that because "[t]here is no indication that the attorney made an independent inspection or other valid independent determination of such compliance [t]his court holds that the attorney is personally responsible for such that an independent inspection would have shown.").  In fact, because an "escrow agent becomes the trustee of both parties after receipt of the funds or instrument in question [and] is required to hold the funds to insure strict compliance with the condition . . . an escrowee must make an independent determination of compliance with the condition, except under the circumstances where compliance is beyond the escrowee's ability to do so."  *Id*.; *see also Earle v. Gangadeen*, N.Y.L.J., Mar. 19, 2003, at 21, n.1 (N.Y. Sup. Ct. Queens Cty. March 19, 2003) (stating that "[a]n escrowee must make an independent determination of compliance with the condition, except under circumstances where compliance is beyond the escrowee's ability to do so.  In that event he may be required to bring an interpleader action for a court determination of compliance" and finding that contractor estimates were not sufficient proof to permit disbursement from an escrow account, rather actual receipts should have been submitted) (a copy of this decision is attached as Exhibit 6); *Helman v. Dixon*, 71 Misc. 2d 1057, 1059 (Civ. Ct. Queens Cty. 1972) ("As escrow agent he is bound to take whatever steps may be necessary to fulfill his duties properly" which includes bringing action to ensure agreement is being complied with) (citation omitted).

26.     As Friedman acknowledged at the Hearing, not only did Stillman & Friedman not make an independent determination of compliance, it did not even ask Saldutti for a statement of compliance.  Rather, all it required of Saldutti when Saldutti sought funds was a simple statement of the total amount sought with no explanation whatsoever of what the funds were going to be used for, and there is no evidence that Stillman & Friedman required Saldutti to account for how he spent the disbursements.  (*See* Exhibit 2 at 149:7-150:6; 159:4-160:12.)

27.     In addition, a lawyer must maintain complete records of all escrowed funds coming into his possession as well as all disbursements made from an escrow account. Code of Professional Responsibility D.R. 9-102(d)(1) (22 NYCRR 1200.46[d][1]) (stating that proper bookkeeping requires that lawyers "shall maintain records for seven years after the events they record" and "shall specifically identify the date, source and description of each item deposited, as well as the date, payee and purpose of each withdrawal or disbursement").

28.     Friedman acknowledged at the hearing that Stillman & Friedman did not maintain any records as to what Saldutti spent the disbursed money on (*see* Exhibit 2 at 170:6-12), nor, as stated above, did Stillman & Friedman require records of any sort to be submitted by Saldutti prior to disbursing the escrow funds.  (*See* Exhibit 2 at 149:7-150:6; 159:4-160:12.)  As a result, Stillman & Friedman is clearly in violation of its recordkeeping obligations as well.

29.     The law is quite clear that an escrow agent may only disburse funds in accordance with the terms of the escrow agreement.  *See*, *e.g.*, *George A. Fuller Co.*, 760 F. Supp. at 386 (stating that "upon acceptance of the agreement, the escrow agent has the duty of strict execution of its terms and conditions. In particular an escrow agent is charged with the duty not to deliver the escrow deposit to anyone except upon strict compliance with the conditions imposed") (quotations omitted); *Farago v. Burke*, 262 N.Y. 229, 233 (1933) (stating that the law

"imposes upon [the escrow agent] a duty not to deliver the escrow to any one except upon strict compliance with the conditions imposed, and even subjects him to damages for his failure"); *Gershen v. Gershen*, 6 A.D.2d 862, 862 (1st Dep't 1958) (stating that "no disposition may be made of the funds in the hands of the escrow-agent except as authorized by the escrow agreement"); *Miller v. J.A. Keeffe, P.C.*, 276 A.D.2d 757 (2d Dep't 2000) (payment of attorney fees which was inconsistent with the escrow agreement constituted conversion on the part of the escrow agent); *Grinblat v. Taubenblat*, 107 A.D.2d 735, 736 (2d Dep't 1985) (stating that "an escrow agent is charged with the duty not to deliver the escrow deposit to anyone except upon strict compliance with the conditions imposed and he is subject to damages for his failure to so act" and affirming the lower court's grant of summary judgment that the escrow agent breached its contractual and fiduciary duties in wrongfully distributing funds to a third party); *Nat'l Union Fire Ins.*, 165 Misc. 2d at 545, 552 (stating that the escrow agents "were required to act in a manner that complied with the obligations set out in the escrow agreement" and "[t]he escrow agent's powers are limited by the terms of the escrow agreement"); *Entm't & Amusements of Ohio, Inc. v. Barnes*, 49 Misc. 2d 316, 318-19 (Sup. Ct. Onondaga Cty. 1966) (stating that escrow agent could not disburse funds from the escrow account unless expressly provided for by the escrow agreement).

30.     Given the fact that Stillman & Friedman distributed amounts to Saldutti far in excess of the maximum of $40,025 to which Saldutti was entitled each month, as well as in excess of each line item cap, Stillman & Friedman obviously has breached this duty as well.

31.     Courts agree that escrow agents are personally liable for breaches of escrow agreements.  As the court explained in *Nat'l Union Fire Ins.*, 165 Misc. 2d 539, "The escrow agent becomes trustee of the parties who have a beneficial interest in the subject matter

of his or her trust and as a result, the escrow agent becomes liable to his or her principals for damages proximately resulting from the breach of trust . . . .  As trustee the escrow agent must make whole the party to which he or she owes a fiduciary duty for any damages arising from the breach of the fiduciary's duty, and the appropriate measure of damages requires placing the beneficiary in the same position it would have been in had the wrong not occurred." *Id.* at 545-46 (holding that escrow agent law firm's failure to abide by the escrow agreement, and failure to make an independent assessment of the satisfaction of a condition of the agreement caused law firm to be liable for damages that "plac[ed] plaintiff in the same condition it would have been in had the wrong not occurred"); *George A. Fuller Co.*, 760 F. Supp. at 387 (the escrow agent "would be liable and subject to damages for a wrongful delivery"); *Akivis*, 128 Misc. 2d at 966 (holding escrow agent liable for damages to plaintiff principal, after the agent dispersed funds without independently inspecting that a condition of disbursement as memorialized in the escrow agreement was met); *Entm't & Amusements of Ohio*, 49 Misc. 2d at 318 ("An escrow agent's authority is derived solely from the escrow agreement and a delivery of the property inconsistent with the terms of the agreement may constitute conversion of which an action will lie against the depository [escrow agent].") (citations omitted)

## **RELIEF SOUGHT**

32.    The Receiver seeks the entry of an order, substantially in the form annexed hereto as Exhibit 7 ("Proposed Order"), providing:

a.    that Saldutti and Stillman & Friedman shall, within _____ days from the date hereof pay to the Clerk of the Court for deposit into an interest-bearing account with the Court Registry Investment System (which will act as reimbursement to the Escrow Account) $378,658.35, plus interest that would have been earned on the money had it remained in the Escrow Account;

b.      that Saldutti and Stillman & Friedman shall, within _____ days from the date hereof, provide an accounting, certified under penalty of perjury by both Saldutti and Friedman, and produce back-up records regarding all of the requests made for disbursements to Saldutti, the depositor, the distributions made by Stillman & Friedman, the escrow agent, and the expenditures of those funds by Saldutti, both for legal and non-legal items, so that the Receiver can determine the amount of funds in addition to the $378,658.35 which should be paid to the Clerk of the Court for deposit into an interest-bearing account with the Court Registry Investment System (which will act as reimbursement to the Escrow Account).

## NOTICE AND PRIOR APPLICATIONS

33.      Notice of this Motion has been provided to:  (i) counsel for the SEC; (ii) Kevin Kelley; (iii) counsel for Messrs. Robert Wildeman, Douglas Ballew and Francis Saldutti, including Stillman, Friedman & Shechtman, P.C.; (iv) last known counsel for Glenn Sherman (deceased) and Lori Sherman, Glenn Sherman's ex-wife; (v) all parties having filed a notice of appearance with the Clerk of this Court; and (vi) all counsel of record.

34.      No prior application for the relief requested herein has been made to this or any other court.

35.      As there are no novel issues of law presented herein, the Receiver respectfully requests, pursuant to Rule 7.1 of the Local Civil Rules for the Southern District of New York, that the Court waive the requirement to file a brief in support of the Motion.

31639654.DOC                                    19

WHEREFORE, the Receiver respectfully requests the entry of an order, substantially in the form of the Proposed Order, and for such other and further relief as is just and proper.

Dated: New York, New York
       May 5, 2008

                         KAYE SCHOLER LLP


                         By:    /s/ Paul J. Curran
                                Paul J. Curran (PC-9851)

                                Karin E. Garvey (KG-7771)
                                425 Park Avenue
                                New York, New York 10022
                                Telephone:  (212) 836-8000
                                Facsimile:   (212) 836-8689

                                    -and-

                                Sheldon L. Solow, Esq.
                                Michael D. Messersmith, Esq.
                                KAYE SCHOLER LLC
                                Three First National Plaza
                                70 West Madison Street
                                Suite 4100
                                Chicago, IL 60602-4231
                                Telephone:  (312) 583-2300

                                Counsel to the Receiver